593 S.E.2d 645

**STATE of West Virginia, Plaintiff below, Appellee,**

v.

**Edwin Mack TAYLOR, Defendant below, Appellant.**

**No. 31405.**

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 14, 2004.

Filed: Feb. 3, 2004.

Dissenting Opinion of Justice Albright March 24, 20034.

Dissenting Opinion of Justice Davis, joined by Chief Justice Maynard filed Feb. 3, 2004.

---

Albright, J., concurred and filed a separate opinion.

Davis, J., dissented and filed a separate opinion in which Maynard, C.J., joined.

Amanda H. See, Moorefield, Counsel for Appellant.

Dennis V. DiBenedetto, Grant County Prosecuting Attorney, Petersburg, Counsel for Appellee.

PER CURIAM.

Edwin Mack Taylor (hereinafter "Mr. Taylor") appeals his convictions for two counts of breaking and entering, one count of grand larceny, and one count of petit larceny[1] in the Circuit Court of Mineral County.[2] After having read the briefs, reviewed the record, and heard oral argument, we find that the circuit court violated W. Va. R. Evid. 404(b) by allowing evidence whose prejudicial effect substantially outweighed its probative value. Thus, we reverse Mr. Taylor's conviction and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Taylor was indicted for the breaking and entering of a building owned by Grant County Mulch, Inc. and for committing the grand larceny of a number of power tools stored therein. In this same indictment he was also indicted for the breaking and entering of a building owned by Schell Farms, Inc. as well as for the grand larceny of a number of power tools stored therein. These crimes occurred in December of 2000.

On December 5, 2001, the State filed a notice of intent to use Rule 404(b)[3] evidence (hereinafter "the 404(b) notice"). In the 404(b) notice, the State explained that

> the Defendant was a user of various controlled substances, particularly methamphetamine, during the time frame that encompassed the commission of these crimes. The Defendant purchased controlled substances from Jamie W. Sites and often paid for same by selling to Mr. Sites stolen property or using cash which he acquired by selling stolen property to others.

The 404(b) notice further provided that "[s]everal of the State's witnesses were aware of the Defendant's drug habit and were also aware that the Defendant's habit of stealing property for the purpose of funding his drug habit." The notice finished that "[t]his evidence would be used to show intent, motive, scheme and complete story."

---

1. Although charged with grand larceny in Count II of the indictment, at some point in the proceedings below this Count was reduced to petit larceny and the jury was only instructed on petit larceny under Count II.

2. The State originally brought this case in Grant County. The trial judge granted Mr. Taylor's motion for a change of venue to Mineral County.

3. W. Va. R. Evid. 404(b) provides:
   **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

On February 15, 2002, the circuit court conducted a hearing on the State's intent to use 404(b) evidence. At the hearing, Wesley Rohrbaugh testified that Mr. Taylor was his roommate and that Mr. Taylor had admitted to using drugs such as "[c]rystal meth, crank, maybe, marijuana." Mr. Rohrbaugh also testified that his personal observations of Mr. Taylor indicated that he was suffering from a change in behavior that Mr. Rorhrbaugh believed illustrated Mr. Taylor's problem with drugs.[4] This testimony of drug use was confirmed by Greg Fortner, whose trial and *in camera* testimony was that he consumed methamphetamine and other drugs with Mr. Taylor. The State also elicited testimony from Cowan H. Pennington that he knew Mr. Taylor and that he smoked marijuana with Mr. Taylor and observed Mr. Taylor a "couple of times" with a "crushed up ... white, powdery substance" that Mr. Taylor "stuck ... on a piece of aluminum foil, and ... burnt the bottom of the aluminum foil, [and] sucked in the smoke with the pen." Although he testified he was not sure, Mr. Pennington stated that he believed Mr. Taylor told him that the drug he was smoking was "crystal meth." Mr. Pennington also testified that Mr. Taylor tried to sell a water pump that was identical to one that Mr. Pennington's uncle reported missing and that Mr. Taylor unsuccessfully sought Mr. Pennington's help in stealing a snowblower and lawnmower for a friend. Mr. Pennington finally testified that during this period, Mr. Taylor did not have a job. At trial, Mr. Pennington's testimony was generally consistent with his *in camera* testimony.

The final witness the State presented was Jamie W. Sites who testified, both at the *in camera* hearing and trial that he was a methamphetamine dealer and that he would trade methamphetamine to Mr. Taylor in exchange for money and property, either directly or through Greg Fortner, including property that had been taken from Grant County Mulch and Schell Poultry.

After the presentation of this testimony, the circuit court found that

by a preponderance of the evidence ... the Defendant did have a problem with the use of controlled substances, especially methamphetamine before, during and after the time frame of the crimes with which he is charged. The Defendant's drug problem and his habits of stealing to fund said drug habit are relevant to the charges in this Case under the Rules of Evidence. Upon balancing the evidence the Court would find that the probative value does outweigh its prejudicial effect. Said evidence will be useable by the State in its case in chief for the limited purposes of establishing motive, intent, scheme or plan and complete story.

At trial, over Mr. Taylor's renewed objections, the witnesses from the 404(b) hearing testified in substantial conformity with their 404(b) hearing testimony.

## II.

### STANDARD OF REVIEW

■ In this appeal, we are asked to examine whether the trial court properly admitted evidence of Mr. Taylor's history of drug use under Rule 404(b). In applying Rule 404(b), we have held:

Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then de-

---

**4.** At trial, Mr. Rohrbaugh testified that he had discussed drug use with Mr. Taylor. Mr. Rohrbaugh did not testify as to Mr. Taylor's admission of drug use nor did Mr. Rohrbaugh testify as to his opinion that Mr. Taylor had a drug problem.

termine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. pt. 2, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994).

■ We have further said that

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock,* 196 W.Va. 294, 310–11, 470 S.E.2d 613, 629–30 (1996) (footnote omitted). We have also held that "[a]s to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. pt. 10, in part, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). With this standard in mind, we turn to the parties' contentions.

## III.

## DISCUSSION

■ Mr. Taylor makes two assignments of error. He first contends the circuit court erred in finding that there was a proper purpose supporting introduction of Mr. Taylor's drug use. He alternately posits that Mr. Taylor's drug use violated W. Va. R. Evid. 403 since its prejudicial effect substan-

tially outweighed its probative value. The State responds that the circuit court correctly found that Mr. Taylor's drug use was legitimately offered to show his motive, scheme, plan or intent and that this evidence did not unfairly prejudice Mr. Taylor. We find that the State's 404(b) evidence was improperly admitted because its prejudicial effect substantially outweighed its probative value under Rule 403.

Mr. Taylor contends that the introduction of his habitual drug use unfairly prejudiced him under W. Va. R. Evid. 403. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ...." While we have held that we review a trial court's decision that the probative value of evidence is not substantially outweighed by its prejudicial effect is reviewed only for abuse of discretion, *e.g.,* syl. pt. 10, *Derr; Gable v. Kroger Co.,* 186 W.Va. 62, 66, 410 S.E.2d 701, 705 (1991) ("Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude any evidence the probative value of which is substantially outweighed by the danger of unfair prejudice to the defendant. Such decisions are left to the sound discretion of the trial judge ...."); *In re Interest of Carlita B.,* 185 W.Va. 613, 630, 408 S.E.2d 365, 382 (1991) ("While we recognize that the probative value of such evidence may, at some point, be substantially outweighed by its unfair prejudicial impact, that balancing is within the sound discretion of the trial court, and its decision will be reversed only upon a clear abuse of discretion."), "[w]e have also cautioned, however, that we will not simply rubber stamp the trial court's decision when reviewing for an abuse of discretion." *State v. Hedrick,* 204 W.Va. 547, 553, 514 S.E.2d 397, 403 (1999). *See also State ex rel. Leung v. Sanders,* 213 W.Va. 569, 575, 584 S.E.2d 203, 209 (2003) (per curiam) (quoting *Hedrick* ).

■ Under Rule 403 "[u]nfair prejudice does not mean damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggests decision on an improper basis." *State v. LaRock,* 196

W.Va. 294, 312, 470 S.E.2d 613, 631 (1996). The advisory committee's note to Federal Rule of Evidence 403 explains that " '[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." We think that test is met here.

"On occasion, the courts have commented that certain categories of crimes can create severe prejudice; by their very nature, these crimes can be highly and unusually inflammatory. The courts have included the following crimes in that category ... narcotics offenses ...." 2 Edward J. Imwinkelreid, *Uncharged Misconduct Evidence* § 8:24 at 108 (Rev. Ed.2003) (footnotes omitted). Thus, "even if some justification is presumed from the record before us for such evidence, its highly prejudicial effect would far outweigh any probative value [under] Rule 403, W. Va. R. Evid." *State v. Wyatt*, 198 W.Va. 530, 544, 482 S.E.2d 147, 161 (1996). In more specific terms, "[e]ven were we to conclude that proof of defendant's addiction constituted evidence of 'motive' within the meaning of [Rule] 404(b), we are satisfied that the prejudicial effect of such evidence far outweighs any probative value it might have and thus it should be barred on that basis." *State v. Mazowski*, 337 N.J.Super. 275, 285, 766 A.2d 1176, 1182 (App.Div.2001).

We concur with the recognition of the California Supreme Court that "[t]he impact of narcotics addiction evidence 'upon a jury of laymen [is] catastrophic .... It cannot be doubted that the public generally is influenced with the seriousness of the narcotics problem ... and has been taught to loathe those who have anything to do with illegal narcotics in any form or to any extent.' " *People v. Cardenas*, 31 Cal.3d 897, 907, 184 Cal.Rptr. 165, 170, 647 P.2d 569 (1982) (quoting *People v. Davis*, 233 Cal.App.2d 156, 161, 43 Cal.Rptr. 357, 360 (1965)). We are not alone in agreeing with this view for the New Jersey Appellate Division has said that "the prejudicial nature of the evidence [of drug use] is particularly self-evident and overwhelming. It is difficult to conceive of anything more prejudicial to a defendant than presenting him to the jury as a drug ad-

dict[.]" *Mazowski*, 337 N.J.Super. at 287, 766 A.2d at 1183. *See also People v. Jones*, 119 Mich.App. 164, 168, 326 N.W.2d 411, 412–13 (1982) ("Evidence of heroin use, however, has a strong prejudicial effect."); *State v. Renneberg*, 83 Wash.2d 735, 737, 522 P.2d 835, 836 (1974) (En Banc) ("In view of society's deep concern today with drug usage and its consequent condemnation by many if not most, evidence of drug addiction is necessarily prejudicial in the minds of the average juror.") Thus, "[i]n cases where the object of the offense was to obtain money for drugs, as the prosecution alleges in this case, evidence of the accused's drug use has been found to be inadmissible." *People v. Holt*, 37 Cal.3d 436, 450, 208 Cal.Rptr. 547, 690 P.2d 1207, 1214 (1984) (In Bank).

In this case, the State introduced considerable evidence of Mr. Taylor's habitual drug use. While the State points us to *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988), where we approved the introduction of a defendant's past drug use to show motive to commit breaking and entering and concomitant larceny, we do not believe that *Johnson* disposes of the case here. In *Johnson*, for example, much of the evidence of drug use and the property crimes used to sustain the habit related not to the defendant, but to the defendant's co-conspirators. Here, though, the State's 404(b) evidence showed that Mr. Taylor himself was not only a regular user of marijuana but also of such hard drugs as regular and crystal methamphetamine and that he himself stole things in order to support his habit. Indeed, in *Johnson*, the evidence of the defendant's drug use was limited to testimony that the defendant "partied" with his co-conspirators-which we found was apparently a reference to the recreational use of drugs. *Id.* at 623, 371 S.E.2d at 344. Here, though, the State introduced considerable evidence of Mr. Taylor's drug use, including a vivid description by Mr. Pennington to the jury of how Mr. Taylor "st[uck] [crank] on tin foil and use[d] a straw and a lighter and smoke[d] it." Finally, the State's evidence relating directly to Mr. Taylor reached back over four months before the robbery. We also find that the prejudice here was enhanced because the State's evidence related to acts that were four months

old at the time of the break-ins. *See State v. Walker,* 188 W.Va. 661, 669, 425 S.E.2d 616, 624 (1992) (threatening statement that defendant would burn down anyone who angered him inadmissible because it was made at least four months before charged arson).

Furthermore, while we recognize the circuit court gave limiting instructions in this case (both at the time the evidence was offered at trial and then again when the court was instructing the jury before deliberations), given the "catastrophic" impact of Mr. Taylor's drug use, we have to conclude that this case presents an instance where limiting instructions simply could not have reduced the unfair prejudice to Mr. Taylor to a point where he could receive a trial based upon what was really at issue in this case— whether he broke and entered and committed larceny and not whether he should be convicted because of his habitual drug use. *See, e.g.,* 1 Stephen A. Saltzburg, et al., *Federal Rules of Evidence Manual* § 105.02[4] at 105-4 (8th ed.2002) (footnote omitted) ("It is well recognized that in some cases a limiting instruction will be insufficient, and proffered evidence must be all together excluded under Rule 403.")

We find that the State's use of Mr. Taylor's drug habit went too far. Consequently, we must conclude that the circuit court abused its discretion.

### IV.

### CONCLUSION

The decision of the Circuit Court of Mineral County is reversed.

Reversed.

ALBRIGHT, Justice, concurring.

The critical issue in this case is whether Appellant was properly convicted for the crimes he was charged with committing, or whether he was convicted "on an improper basis, commonly ... an *emotional one,*" due to the introduction of what is referred to as "bad acts" evidence. *See* Fed.R.Evid. 403 advisory committee's note (emphasis added). As Justice Cleckley articulated in the seminal West Virginia case on Rule 403:

> Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence.

Syl. Pt. 9, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). Yet another significant observation made by Justice Cleckley in *Derr* is that the West Virginia Rules of Evidence "constitute more than a mere refinement of common law evidentiary rules; they are a comprehensive reformulation of them." *Id.* at 177, 451 S.E.2d at 743.

Against this backdrop of the purposes sought to be achieved by Rule 403, this Court's decisions in *Derr* and *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), prove useful when discussing the limitations that Rule 403 is intended to impose on the introduction of evidence that is otherwise relevant. With regard to the case *sub judice, McGinnis* is particularly instructive given its extensive consideration of the State's proffer of evidence of other crimes, wrongs, or acts of a criminal defendant under West Virginia Rule of Evidence 404(b), in view of the fact that the evidence sought to be introduced in *McGinnis* also addressed the character of the accused.

In *McGinnis,* this Court delineated the pertinent considerations at each and every stage of a proceeding in which the introduction of Rule 404(b) evidence is sought. Before evidence is introduced under Rule 404(b), the following summarized four-part analysis must be conducted by the trial court:

1. Is the "other crime" evidence probative of a material issue other than character?

2. Is the evidence relevant under Rules 401 and 402, as enforced by Rule 104?

3. Under the Rule 403 balancing test, is the probative value of the evidence out-

weighed by a substantial risk of prejudice if the evidence is admitted?

4. Should a limiting instruction be given?

*See McGinnis,* 193 W.Va. at 155–56, 455 S.E.2d at 524–25.

To assist trial courts when conducting the balancing test required by the third prong of the Rule 404(b) analysis, Justice Cleckley identified a list of relevant factors to be examined:

(a) the need for the evidence, (b) the reliability and probative force of the evidence, (c) the likelihood that the evidence will be misused because of its inflammatory effect, (d) the effectiveness of limiting instructions, (e) the availability of other forms of proof, (f) the extent to which admission of evidence will require trial within trial, and (g) the remoteness and similarity of the proffered evidence to the charged crime.

*McGinnis,* 193 W.Va. at 156, n. 11, 455 S.E.2d at 525, n. 11. In addressing the competing considerations at play during the trial court's hearing of a Rule 404(b) motion, Justice Cleckley elucidated that:

(a) "The balancing necessary under Rule 403 must affirmatively appear on the record."

(b) Evidence of prior crimes, wrongs or acts "may be offered for *any* relevant purpose that does not compel an inference from character to conduct."

(c) "It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b)."

(d) "The specific and precise purpose for which the evidence is offered must clearly be shown from the record."

*McGinnis,* 193 W.Va. at 154, 156, 455 S.E.2d at 523, 525.

Returning to the subject case, the record in this matter indicates that Appellant was initially prosecuted in Grant County upon a single indictment which set forth two separate offenses of breaking and entering closely related in time to each other and two larcenies committed in the course of the respective breaking and entering incidents. *Because of the danger of prejudice* arising from news stories related to the crimes, the cases were moved to Mineral County pursuant to a successful change of venue motion. Seeking again to protect Appellant from a conviction based on prejudice, his counsel objected to the introduction of the 404(b) evidence based primarily on references made to Appellant's involvement in drug dealings, both before and after the commission of the crimes alleged in the indictment.

In preparing for trial, the State had obtained solid evidence that Appellant had committed the crimes at issue to acquire money and to use that money for the purchase of drugs and other goods.[1] The record of this case demonstrates that the State had little difficulty in categorizing Appellant as "a bad actor," given his substantial criminal record. (The trial court even approved the use of a misdemeanor conviction for possession of drugs that occurred more than ten years ago, although that particular "bad actor" evidence was not actually used at trial). In presenting the reasons for the State's Rule 404(b) motion, the prosecutor referred in summary fashion to "the litany of possible uses listed in Rule 404(b)." *McGinnis,* 193 W.Va. at 154, 455 S.E.2d at 523. Because both the State and the trial court relied almost exclusively on the Rule's "laundry list" of possible uses, it is difficult, if not impossible, to discern the actual evidentiary purpose for which the drug dealing evidence was admitted into evidence.

Significantly, the record is devoid of any analysis of the *McGinnis* factors which this Court identified for purposes of engaging in the required Rule 404(b) balancing process. For instance, although the State claimed it needed the evidence to show motive, the transcripts of the interviews of the "drug" witnesses acquired before trial make clear that the entire substance of their testimony could have been utilized at trial without mentioning any use of "drugs." The record is

---

1. In reviewing the record in this case, I have carefully examined the motion for the introduction of the Rule 404(b) evidence; the transcript of the hearing on the motion; including the oral argument of the parties, the findings of the trial court made from the bench, and the circuit court's ruling on this evidentiary motion.

similarly lacking of any analysis of whether the introduction of "drug dealing" by Appellant at trial would be likely to lead to a misuse of the evidence to convict Appellant for "drug dealing," rather than for the charges at issue—breaking and entering and larceny. Nor does the record show whether the trial court considered whether its limiting instructions (given twice) would in fact be effective to cleanse the Rule 404(b) evidence of any undue prejudicial effect. Critically, the record demonstrates that the State had a substantial case likely to lead to a conviction, without the introduction of "drug" evidence. It is clear from the record below that the trial court gave no consideration at the hearing, which was held several weeks before the trial, to whether the State needed this Rule 404(b) evidence to make its case. Of further note is the fact that some of the evidence—which the State intended to introduce, and did in fact introduce, to show plan and scheme—related to dealing in stolen goods which took place months before the offenses included in the indictment.

I do not mean to suggest that evidence of prior or subsequent drug dealing is never appropriate, especially where such evidence might be shown to be crucial to the State's case. However, much like the evidence of satanic ritual involvement that was introduced in *State v. Wyatt,* 198 W.Va. 530, 482 S.E.2d 147 (1996), evidence of Appellant's "drug dealing" had a palpable capacity to inflame the collective emotions of jurors, who were likely to be concerned, and understandably so, about the sale and use of illegal drugs in and around their communities. Although this Court found that the issue of satanic ritual participation had no bearing on the relevant issues in *Wyatt,* the Rule 404(b) evidence of Appellant's involvement in "drug dealing" did bear some relevancy to the issues being tried in the case at bar. Critical to a proper understanding of this issue, however, is an appreciation of that fact that Appellant's "drug dealing" was not determinative of any issue in the case, and, as the record demonstrates, the State had ample evidence to prove each element of its case *without* introducing the prejudicial evidence of "drug dealing." Consequently, under those circumstances, it is arguable that the

introduction of Appellant's "drug dealing" evidence gave rise to an increased likelihood that he would be convicted of breaking and entering and larceny based, in part, on the fact that he had engaged in "drug dealing," both before and after the crimes for which he was on trial, and also based on his characterization as a "bad actor." In spite of the valid concerns recognized by the federal advisory committee on this very issue, Appellant's conviction likely resulted from "an improper basis" that was "emotional" in nature after the jurors heard the Rule 404(b) evidence. Fed.R.Evid. 403 advisory committee's note.

In my judgment, the lasting value of this case to both the practicing bar and the judiciary, is the opportunity to encourage the State to seek the introduction of Rule 404(b) evidence in those cases where it can articulate and demonstrate clear grounds for its need for such evidence; to encourage defense counsel to vigorously object to the introduction of such evidence with well-articulated grounds; and to encourage trial courts to engage in the required balancing test with a proper consideration of all relevant factors bearing on the introduction of such evidence. Only through such a detailed, deliberate and well-documented process can the true purpose of the rule be achieved, which is to ensure that the introduction of this type of evidence will be limited to those instances in which its use is clearly warranted under the facts of a given case after due and full consideration has been given to its potential to improperly sway the jury's decision.

DAVIS, J., dissenting, joined by Chief Justice MAYNARD.

"What makes a decision 'judicial' and not an exercise in raw power is its discipline: principled decision-making after careful attention to precedent and persuasive argument and close application to fully-developed facts." *Davis v. Moore,* 772 A.2d 204, 237 (D.C.2001) (Ruiz, J., concurring in part and dissenting in part). Here, the majority finds that the probative value of habitual drug use to show motive to commit a property crime is inadmissible as its probative value is outweighed by its prejudicial effect. Because this conclusion ignores, distorts, and misap-

plies precedent, ignores the factual content and context of the State's 404(b) evidence, effectively overrules an opinion of this Court, and threatens our carefully-crafted law under Rule 404(b), I dissent.

### A. The majority has ignored well-established precedent.

Although not cited by the majority, we have consistently said that Rule 404(b) "is an 'inclusive rule' in which all relevant evidence involving other crimes or acts is admitted at trial unless the sole purpose for the admission is to show criminal disposition." *State v. Edward Charles L.*, 183 W.Va. 641, 647, 398 S.E.2d 123, 129 (1990). *Accord State v. Nelson*, 189 W.Va. 778, 784, 434 S.E.2d 697, 703 (1993); *State v. Lola Mae C.*, 185 W.Va. 452, 459, n. 14, 408 S.E.2d 31, 38 n. 14 (1991). Additionally, "[i]n reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect." *State v. McGinnis*, 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994). *Accord State v. LaRock*, 196 W.Va. 294, 312, 470 S.E.2d 613, 631 (1996); *State v. Williams*, 198 W.Va. 274, 279, 480 S.E.2d 162, 167 (1996) (per curiam). Thus, "[t]he balancing of probative value against unfair prejudice is weighed in favor of admissibility[.]" *LaRock*, 196 W.Va. at 312, 470 S.E.2d at 631. *Accord State v. McIntosh*, 207 W.Va. 561, 567, 534 S.E.2d 757, 765 (2000) (per curiam). Finally, syllabus point 3 of *LaRock* holds that

> It is presumed a defendant is protected from undue prejudice if the following requirements are met: (1) the prosecution offered the evidence for a proper purpose; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave a limiting instruction.

Application of this law compels affirming the convictions, as I now shall illustrate.

### B. The majority tortures the law and facts to find that the circuit court's ruling violated Rule 403.

The majority faults the circuit court's conclusion that the probative value of the evidence was not substantially outweighed by its unfairly prejudicial effect.[1] While recognizing review of this issue is limited to an abuse of discretion, the majority proceeds to completely misapply this standard. Under abuse of discretion review, we do not substitute our judgment for the circuit court's. *Burdette v. Maust Coal & Coke Corp.*, 159 W.Va. 335, 342, 222 S.E.2d 293, 297 (1976) (per curiam); *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970), *overruled on other grounds by Cales v. Wills*, 212 W.Va. 232, 569 S.E.2d 479 (2002). Instead, we ask only if the circuit court ignored a material factor deserving substantial weight, relied on an improper factor, or made a serious mistake in weighing the material factors. *State v. Calloway*, 207 W.Va. 43, 47, 528 S.E.2d 490, 494 (1999). Determining whether a circuit court made a serious mistake in weighing the material factors is "limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that [the lower court] can be said to have abused its discretion." *McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528. A decision is "arbitrary and irrational" only if it "cannot be supported by reasonable argument." 1 Stephen A. Satzburg, et al., *Federal Rules of Evidence Manual* § 403.02[19] at 403–43 (8th ed.2002). Hence, "Appellate Courts will check to see that the Trial Court has *conducted* a balancing process. The *result* of a careful balancing process will not itself be second-guessed." *Id.* § 403.02[19] at 403–44 (footnotes omitted). "The Appellate Court will not reverse a Rule 403 decision simply because the Appellate Judges would have ruled differently had they been trying the case." *Id.* § 403.02[19] at 403–43 (footnote omitted). The majority disregards the limited nature of our review and substitutes a *de novo* standard under the guise of not "rubber stamping" the circuit

---

**1.** I will not belabor that we have already found drug use/motive evidence legitimate and relevant in *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d

340 (1988), so that the first two prongs of syllabus point 3 of *LaRock* are met.

court's ruling. Applying the proper standard of review in a proper manner leads to the conclusion the circuit court should be affirmed.

Here, the circuit court's conclusion comports with *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988). The majority's attempts to distinguish *Johnson* because the drug use in that case related predominantly to the co-conspirators is insupportable because we specifically identified in *Johnson* that "[e]vidence that the defendant had used drugs with his co-conspirators was ... admissible to show motive for commission of the crimes charged." *Id.* at 627, 371 S.E.2d at 348. *See also Woodrum v. Johnson*, 210 W.Va. 762, 766, 559 S.E.2d 908, 912 (2001) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1114, 1129, 134 L.Ed.2d 252, 273 (1996))). Moreover, we examined *Johnson* in *State v. Miller* and concluded that *Johnson's ratio decendi* was that the *defendant's* drug use was admissible to show motive:

> In the *Johnson* case, the state was permitted to introduce evidence not only of the defendant's drug usage but evidence that the defendant tended to purchase drugs with stolen money. The reason the trial court allowed such evidence to be admitted was that it provided a motive for the defendant's participation in the robbery for which he was on trial.

184 W.Va. 492, 499, 401 S.E.2d 237, 244 (1990) (per curiam) (citations omitted). Thus, since the circuit court's decision comports with *Johnson*, and a number of other cases finding that such drug use motive is admissible under Rule 403,[2] I cannot consider the circuit court's decision arbitrary and irrational. Therefore, I would apply *Johnson* and find "the probative value of the other

crime evidence in this case was not outweighed by the possible prejudicial effect on the jury." 179 W.Va. at 627, 371 S.E.2d at 348 (footnote omitted).

Moreover, the majority's finding that Mr. Taylor's drug use was inadmissible because it occurred four months before the crimes charged in this case is both legally flawed and factually erroneous. We have held that "[a]s a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." Syl. pt. 6, *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982). As we observed in *State v. McIntosh*,

> "[r]emoteness, or the temporal span between a prior crime, wrong, or other act offered as evidence under Rule 404(2) and a fact to be determined in a present proceeding, goes to the weight to be given to such evidence and does not render the evidence of the other crime, wrong, or act irrelevant and inadmissible."

207 W.Va. 561, 573, 534 S.E.2d 757, 769 (2000) (per curiam) (citation omitted).

The majority is factually wrong in claiming the evidence was four months old. While the State explained that it limited Mr. Taylor's drug use to a four month period, what the majority misses is that this four months *was not* the four months leading up to the break-ins; rather, it was the month or two prior to the break-ins, the month of December when the break-ins occurred; and the month of January when Mr. Taylor traded the goods he stole from Grant County Mulch and Schell Farms. At most, the State introduced evidence of Mr. Taylor's drug use only in the one or two months leading up to the break-ins.[3] Consequently, I do not find *State v. Walker*, 188 W.Va. 661, 669, 425 S.E.2d 616, 624 (1992), authority for the majority's con-

---

**2.** *See, e.g., United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir.2003) (evidence of defendant's drug habit to show motive for armed robbery did not violate Rule 403); *United States v. Cartagena–Merced*, 986 F.Supp. 698, 704 (D.P.R.1997) ("We do not find the possible collateral prejudice Defendant ... may suffer by the Fed.R.Evid. 404(b) evidence [of drug offenses] sufficient to outweigh the government's legitimate purpose in proving

the motive of the bank robbery."); *State v. Feliciano*, 256 Conn. 429, 454, 778 A.2d 812, 828 (2001) (similar).

**3.** In the *in camera* hearing, the circuit court found Mr. Taylor's July 2000 drug conviction admissible. The State, however, chose not to introduce this evidence at trial.

clusion, because the case *sub judice* did not involve evidence that was four months old.[4]

The circuit court's ruling is justifiable on yet another ground. The State's case was circumstantial. A circumstantial case favors admitting motive evidence since motive evidence "is of great probative force in determining guilt, especially in cases of circumstantial evidence[.]" 22 C.J.S. *Criminal Law* § 34 at 40 (1989). Significantly, there is a higher tolerance for the risk of prejudice in cases where the evidence is "particularly probative." *United States v. Rivera*, 6 F.3d 431, 443 (7th Cir.1993).[5]

Finally, the non-West Virginia cases the majority cites are unpersuasive. For example, the majority cites *State v. Mazowski*, 337 N.J.Super. 275, 766 A.2d 1176 (App.Div. 2001). However, not only does *Mazowski* contradict *Johnson*, at least one court has not found *Mazowski* to be persuasive enough to be followed. In *State v. Crawley*, 633 N.W.2d 802, 807–08 (2001), the Iowa Supreme Court recognized that *Mazowski* creates controversy over whether drug use motive evidence is too prejudicial to be admissible. The Iowa Supreme Court, however, rejected *Mazowski* finding that, even had the defense objected, evidence of the defendant's drug use to show the motive to commit forgery of checks to obtain money to purchase drugs was not too prejudicial to

be admitted under Rule 403. *Crawley*, 633 N.W.2d at 808.

The majority's citation to *People v. Jones*, 119 Mich.App. 164, 168, 326 N.W.2d 411, 412–13 (1982), is misplaced as *Jones* actually supports the State. *Jones* recognized that drug use/motive evidence has a strong prejudicial effect. Unlike the majority, however, the *Jones* court did not stop its analysis with this observation. Rather, it went on to conclude that such evidence is admissible if the State shows relevance by establishing "(1) that defendant was addicted at or near the time of the offense and, therefore, compelled to obtain the drug, and (2) that defendant lacks sufficient income from legal sources to sustain his or her continuing need for heroin." *Id.* at 168, 326 N.W.2d at 413. *Jones* went on to state that "*[w]ithout such a foundation*, evidence of heroin use should be excluded from proof of motive, as its prejudicial effect substantially outweighs its probative value." *Id.* at 168–69, 326 N.W.2d at 413 (emphasis added). Here, the 404(b) evidence showed Mr. Taylor was unemployed and a habitual user of methamphetamine, an expensive[6] schedule II drug,[7] at the time of the Grant County Mulch and Schell Poultry break-ins. Thus, the State's 404(b) evidence provided the necessary foundation to establish the relevance of Mr. Taylor's habitual drug use and to avoid a Rule 403 violation.[8]

---

**4.** Of course, an added factor of consequence in *Walker* was that the four month old threat—which would normally be used to prove premeditation—was not directed to anyone in particular. Thus, the four months in *Walker*, *along with the other circumstances*, contributed to the lessening of the probative value of the threat. Here, however, the drug abuse evidence went to prove motive, *i.e.*, that Mr. Taylor's habitual drug use caused him to disregard the law and steal things to pay for his habit. Even if the drug use evidence was four months old, its admission would not be an abuse of discretion. *See Bitterman*, 320 F.3d at 727 (evidence of defendant's five year old drug habit admissible). *Cf. United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir.1992) (six month old evidence that witness observed drug making paraphernalia admissible over remoteness challenge). Indeed, the longer a defendant used drugs the stronger would be the defendant's need to obtain drugs and the more probative the evidence of drug use.

**5.** I cannot let it go unnoticed that, while the majority points out that some of the "hard

drugs" use by Mr. Taylor were methamphetamines as a basis to show the prejudicial nature of the State's evidence, methamphetamines were some of the drugs involved in *Johnson*. 179 W.Va. at 623, 371 S.E.2d at 344.

**6.** Methamphetamine prices in West Virginia range from $150.00 a gram to $1,600.00 an ounce. Dep't of Justice, National Drug Intelligence Center, *West Virginia Drug Threat Assessment* (Aug.2003), *available at* http://www.usdoj.gov/ndic/pubs5/5266/meth.htm# Top.

**7.** W. Va.Code § 60A–2–206(d)(2) (Repl.Vol.2000) (Supp.2003) A schedule II drug is one having a high potential for abuse which may lead to severe psychic or physical dependance. *Id.* § 60A–2–205 (Repl.Vol.2000).

**8.** Although we normally do not cite unpublished opinions, *Henry v. Benyo*, 203 W.Va. 172, 176 n. 3, 506 S.E.2d 615, 619 n. 3 (1998), I would be remiss if I did not point out that in *People v. Flint*, No. 232534, 2002 WL 857606 (Mich.Ct.

The majority's reliance on California cases is misplaced as well. In California drug habit is admissible to show motive only if the motive of the charged crime is to directly obtain drugs or to violate the Health and Safety Code. *People v. Cardenas,* 31 Cal.3d 897, 906, 184 Cal.Rptr. 165, 647 P.2d 569, 573 (1982). The basis for this approach is that habitual drug usage tends only to " 'remotely or to an insignificant degree ... prove a material fact in the case ....' " *Id.* at 906, 184 Cal.Rptr. 165, 647 P.2d at 573 (citation omitted). In *Johnson* we did not rely on California law. We did, however, cite to certain other jurisdictions including the United States Court of Appeals for the Seventh Circuit. 179 W.Va. at 627, 371 S.E.2d at 348 (citing *United States v. Cyphers,* 553 F.2d 1064 (7th Cir.1977)). The Seventh Circuit has implicitly rejected the underlying premise of the California cases that drug use and property crime motives are too insignificant to prove a fact in a case by finding that "the drug use and the crime at issue [of bank robbery] ... have a significant relationship because the act [of drug use is] the motive underlying the crime of bank robbery." *United States v. Brooks,* 125 F.3d 484, 500 (7th Cir.1997). Likewise, we relied on Georgia authority in *Johnson,* 179 W. Va. at 627, 371 S.E.2d at 348 (citing *Carruth v. State,* 182 Ga.App. 786, 357 S.E.2d 122 (1987)), and the Georgia Court of Appeals has found that "a reasonable factfinder could infer a connection between the armed robbery [and] the purchase of cocaine .... The association between the high cost of drugs and the need for funds to purchase them is well recognized." *Chergi v. State,* 234 Ga.App. 548, 549, 507 S.E.2d 795, 796 (1998). *See also Crawley,* 633 N.W.2d at 808 (finding a logical relationship between forgery and drug use since the motive for the forgery was to obtain funds to buy drugs). The majority's reliance on *Cardenas* is simply unavailing in light of *Johnson* and the subsequently developed

case law from other jurisdictions upon which *Johnson* relied. *See also* Hon. Mark B. Simmons, *Simmons California Evidence Manual* § 1:32 (2002–2003 ed.) (observing that "despite [*Cardenas's*] holding, evidence of drug addiction has not been rejected uniformly in cases in which the object of the robbery has been money.")

Finally, I disagree that this is one of those cases where no limiting instructions could have mitigated the evidence of Mr. Taylor's habitual drug use. Indeed, we found such instructions to be efficacious in *Johnson.* 179 W.Va. at 627, 371 S.E.2d at 348. This result is in accord with a number of other jurisdictions. *See, e.g., Bitterman,* 320 F.3d at 727 ("Moreover, as the judge gave the jury a limiting instruction (regarding the heroin testimony) to this effect, we are not convinced that the potential prejudice from such evidence outweighed its probative value."); *Cartagena–Merced,* 986 F.Supp. at 704–05 (similar); *State v. Feliciano,* 256 Conn. 429, 454, 778 A.2d 812, 828 (2001). Moreover, a limiting instruction is particularly effective in mitigating evidence of a defendant's habitual drug use when the evidence (such as that here) does "not involve acts of violence that could have shocked or otherwise influenced the jury." *Feliciano,* 256 Conn. at 454, 778 A.2d at 828.

## C. The majority opinion effectively over-rules State v. Johnson and leaves this Court's 404(b) jurisprudence in serious doubt.

The majority disagrees with the circuit court's decision and, in order to reverse, ignores, distorts, and misapplies precedent, contradicts the record and, in practical effect, overrules *State v. Johnson.* The majority has blithely disregarded the observation that " '[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.' " 2

---

App. Apr.30, 2002), the appellate court found that the following evidence (similar to the evidence here) met *Jones* so that the trial court's exclusion of this evidence constituted error:

1. A number of people saw the defendant use cocaine;
2. The defendant bought cocaine three times per week;

3. The defendant tested positive for cocaine and lost his job within five or six weeks of the murder;
4. The defendant tried to borrow money within six months before the murder, and,
5. The defendant tried to sell items the week before the murder.
*Id.* at * 3–*5.

*Weinstein's Federal Evidence* § 403.02[2][d] at 403–22 (2d ed.2003) (footnote omitted).

As one of the members of this Court has previously commented,

> I see absolutely no justification for disregarding our deep-rooted dedication to the principle of stare decisis in circumstances such as these where the law is clear. Casting aside well-settled law for no reason other than to substitute judge-made law is particularly reprehensible in the area of criminal law where clarity and fairness are overriding concerns.

*State v. Anderson*, 212 W.Va. 761, 767, 575 S.E.2d 371, 377 (2002) (per curiam) (Albright, J., concurring). Further, since all four prongs of syllabus point 3 of *LaRock* have been met in this case and the majority still reverses, I fear that the majority opinion will metastasize beyond simply this case and hazard all of our carefully crafted Rule 404(b) jurisprudence, much of which was authored by former Justice Franklin D. Cleckley, one of the foremost scholars in criminal law in the entire country. Thus, I dissent. I am authorized to state that Chief Justice Maynard joins me in this dissenting opinion.