# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 22-0306** (Berkeley County CC-02-2020-F-192)

**Donnyel Simmons,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner appeals the Circuit Court of Berkeley County's March 22, 2022, order sentencing him following his convictions for the first-degree murder of Ryan Lynch (the "victim"), the use a firearm during the commission of a felony, and felony possession of a firearm.[1] Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

The evidence at petitioner's trial showed that Derrick Hollins Sr. hosted a party at his home on May 23, 2020, that petitioner and the victim, among others, attended. Petitioner had a red bandana at the party. After Mr. Hollins went to bed, petitioner woke him in the early morning hours of May 24, 2020, claiming that "[t]hey" had "kidnapped" petitioner and "were trying to hurt and kill him." Mr. Hollins described petitioner as "frantic, agitated, and scared," and testified that petitioner confirmed with Mr. Hollins that Mr. Hollins's gun was "in the same place." Petitioner then retrieved that gun, loaded it, racked it, and exited Mr. Hollins's bedroom. Mr. Hollins got out of bed and went to his son's bedroom window, from which he could see that petitioner and the victim were arguing outside.[2] At this point in Mr. Hollins's testimony, petitioner objected, asserting at a sidebar that he had been "deprived of discovery." Petitioner explained that Mr. Hollins gave three statements to the police, and he never reported having seen anything related to the shooting from his son's window. In response, the State denied any obligation to inform petitioner of Mr. Hollins's expected testimony (beyond that contained in his statements to the

---

[1] Petitioner appears by counsel B. Craig Manford. The State appears by Attorney General Patrick Morrisey and Assistant Attorney General Mary Beth Niday.

[2] Mr. Hollins testified that he could also see that Lisa Dickey, the victim's girlfriend, was seated in her car, and Duke Jackson, another partygoer, was standing behind petitioner outside of the car. Ms. Dickey was not called by the State to testify. Mr. Jackson was not found after Mr. Hollins's party, and his whereabouts remained unknown at the time of petitioner's trial.

police) because (1) Mr. Hollins had been disclosed as a witness, (2) Mr. Hollins had "uttered" the expected supplemental information "in preparation for trial," and (3) the information was neither reduced to writing and signed nor recorded. The court agreed. Petitioner moved for a mistrial, which the court likewise denied, reasoning, "I don't [think] this is any error that can't be corrected and skillfully handled on cross-examination."

Thereafter, Mr. Hollins testified that he saw petitioner point the gun at the victim. Although Mr. Hollins did not see what happened next because he stepped away from the window, Mr. Hollins did hear three to four shots. Shortly after the shots were fired, Mr. Hollins heard voices in his home, so he walked downstairs, where he saw petitioner "with the gun in a, like a rag of [sic] a napkin" that was red in color. Mr. Hollins then saw petitioner in his backyard walking away from the home, and when petitioner walked back toward the home, his hands were empty. Investigating officers recovered a KelTec nine millimeter handgun wrapped in a "red in color bandana or rag" in or near Mr. Hollins's backyard, which Mr. Hollins identified as the gun taken by petitioner.

Mr. Hollins explained that he did not inform the police of every fact to which he testified because "[t]hey didn't ask," and he conceded that he was reluctant to fully inculpate petitioner because he considered him a friend. In response to questioning during cross-examination on his omission of information in his statements to the police, Mr. Hollins testified to "not recollecting" fully disclosing to police the information he claimed at trial to possess.

The State medical examiner testified that the victim died from two gunshot wounds: one to his forehead and one to the back of his head. Forensic scientists employed by the West Virginia State Police Forensic Laboratory testified that gunshot residue was found on petitioner's right palm, left palm, left back, and face—that is, on all samples taken from petitioner, except one from his right back. The scientists linked fired cartridge cases and a bullet fragment recovered from the murder scene to the recovered KelTec gun, and in their DNA analysis of the red bandana in which the gun was wrapped, they found that the "primary results" were consistent with petitioner's DNA.[3] Also, in security camera footage taken from a convenience store petitioner visited only minutes after the shooting, petitioner is seen without his red bandana.

The jury rendered its guilty verdicts, and at the conclusion of the bifurcated mercy phase, the jury recommended that no mercy attach to petitioner's sentence for first-degree murder. Petitioner was sentenced on March 22, 2022, to consecutive terms of incarceration of life without mercy for his first-degree murder conviction, ten years for his use of a firearm during the commission of a felony conviction, and five years for his felony possession of a firearm conviction. He now appeals.

Petitioner first claims error in the court's failure to grant the motion for a mistrial he made during Mr. Hollins's testimony. He argues that the State failed to disclose Mr. Hollins's "changed statement" in violation of Rules 16 and 26.2 of the West Virginia Rules of Criminal Procedure and that the "changed statement" constituted material subject to disclosure under *Brady v. Maryland*,

---

[3] The bandana contained "a mixture of DNA from three or more individuals," but the other contributors were "low level," and no conclusions could be reached on them.

which requires the State to disclose evidence that is "favorable to an accused." 373 U.S. 83, 87 (1963).

We review a circuit court's disposition of a motion for a mistrial for an abuse of discretion. Syl. Pt. 1, *State v. Costello*, 245 W. Va. 19, 857 S.E.2d 51 (2021). Rule 16(a)(2) of the West Virginia Rules of Criminal Procedure provides, in part, that "statements made by state witnesses or prospective state witnesses" need not be disclosed, "except as provided in Rule 26.2." Rule 26.2 requires the production of statements in certain circumstances, but it specifies that "a statement of a witness" means a "written statement," a "substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a . . . recording or a transcription thereof," or a "statement . . . made by the witness to a grand jury." Mr. Hollins's oral, unwritten account was not recorded, and it was provided to the State during its trial preparation, not to the grand jury. Consequently, it is not a "statement of a witness" as used in the cited rules, and petitioner has not shown that those rules imposed any obligation upon the State to inform him of the information Mr. Hollins conveyed during trial preparation. Without having demonstrated a violation of the cited rules in the first instance, petitioner has not shown that the court should have exercised its discretion to declare a mistrial based upon any discovery violation—discretion that may be exercised "only when there is a 'manifest necessity' for discharging the jury before it has rendered its verdict." *State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983).

We find, too, that petitioner has failed to demonstrate that a mistrial was warranted when considering the issue under *Brady*. To establish a due process violation under *Brady* and this State's counterpart to *Brady*, *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982), a defendant must show that the evidence at issue was "favorable to the defendant as exculpatory or impeachment evidence," that it was "suppressed by the State," and that it was "material." Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). Because all three components must be satisfied, *State v. A.B.*, 247 W. Va. 495, ---, 881 S.E.2d 406, 419 (2022) (citation omitted), our analysis can start and end with materiality. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Id.* (quoting *Youngblood*, 221 W. Va. at 32, 650 S.E.2d at 131). And "the withheld evidence 'must be evaluated in the context of the entire record.'" *Id.* (quoting *United States v. Agurs*, 427 U.S. 97 (1976)). As detailed above and below,[4] the evidence against petitioner was substantial. Had petitioner been made aware that Mr. Hollins withheld certain information from investigators, this impeachment evidence could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (quoting *Kyles v. Whitley*, 514 US. 419 (1995)). In fact, we know that confidence in the verdict would not have been undermined because petitioner cross-examined Mr. Hollins on his failure to fully disclose, and petitioner's use of that impeachment evidence was ultimately unavailing. Because petitioner has not established a due process violation under *Brady*, he has set forth no basis for the court to have declared a mistrial. Accordingly, the court did not abuse its discretion in denying petitioner's motion on that ground.

---

[4] Petitioner challenges the sufficiency of the evidence to support his first-degree murder conviction, which is addressed below.

Next, petitioner claims that the court erred in failing to "suppress" a portion of his recorded police interview where, in response to a request that petitioner remove his shirt for gunshot residue testing, he is seen ripping his shirt from his body and shaking it in an apparent attempt to remove gunshot residue. Petitioner argues that the evidence was "inflammatory and highly prejudicial" and, therefore, should have been excluded under Rule 403 of the West Virginia Rules of Evidence.

Rule 403 provides that relevant evidence may be excluded where the probative value of that evidence is "substantially outweighed by," among other things, "a danger of . . . unfair prejudice." "The prejudice that the trial court must assess is the prejudice that 'lies in the danger of jury *misuse* of the evidence,'" *State v. Guthrie*, 194 W. Va. 657, 683, 461 S.E.2d 163, 189 (1995) (quoting *United States v. Brown*, 490 F.2d 758, 764 (D.C. Cir. 1973)), and "evidence is unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case.'" *Id.* at 683 n.37, 461 S.E.2d at 189, n.37 (quoting 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 403[03] at 403-15 to 403-17 (1978)). Petitioner made no such showing below, and, before this Court, he hinges his claim on the conclusory assertion that the evidence was "inflammatory." But because "[u]nfair prejudice does not mean damage to a defendant's case that results from the legitimate probative force of the evidence," *State v. Taylor*, 215 W. Va. 74, 78, 593 S.E.2d 645, 649 (2004), the court did not abuse its discretion in performing its Rule 403 balancing test. *See* Syl. Pt. 8, in part, *State v. Rollins*, 233 W. Va. 715, 760 S.E.2d 529 (2014) (setting forth that a "trial court enjoys broad discretion" in conducting the balancing required under Rule 403).

In his third assignment of error, petitioner challenges the sufficiency of the evidence to support his first-degree murder conviction. Specifically, petitioner argues that no rational jury could have found that he "was the shooter." Petitioner contends that Mr. Hollins's testimony was "ludicrous and unbelievable," and petitioner highlights his challenges to Mr. Hollins's credibility during trial. Petitioner also notes that gunshot residue can collect on a person without that person having fired a gun, as testified to by a forensic scientist at petitioner's trial.

When challenging the sufficiency of the evidence to support a conviction, "[a]n appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. "Credibility determinations are for a jury and not an appellate court," *id.*, so petitioner's challenges to Mr. Hollins's credibility are made in vain. Rather, "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.* Viewed in the light most favorable to the prosecution and crediting it with all inferences that the jury might have drawn, the evidence showed that petitioner retrieved Mr. Hollins's gun, loaded it, racked it, pointed it at the victim, and fired the lethal shot. Indeed, petitioner was covered in gunshot residue, and the casings and bullet fragments found at the scene were matched to the gun petitioner was holding. Further, that gun was found wrapped in a bandana bearing petitioner's DNA in or near Mr. Hollins's backyard, which is where Mr. Hollins observed petitioner walking after the victim was shot. Accordingly, it cannot be said that the record contains no evidence from which the jury could have found that petitioner willfully, deliberately, and premeditatedly killed the victim, so we find no merit to this

4

assignment of error.[5] *See* W. Va. Code § 61-2-1 ("Murder . . . by any willful, deliberate and premediated killing . . . is murder of the first degree.").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[5] In a final assignment of error, petitioner claims that the court erred in failing to instruct the jury on the lesser included offenses of first-degree murder, but, in support, he offers only the theory that the victim "could have pulled his gun on" petitioner, as "no one kn[ows] what happened" when Mr. Hollins stepped away from the window before the shots were fired. Because "[i]nstructions must be based upon the evidence"—not theories—"and an instruction which is not supported by evidence should not be given," Syl. Pt., *State v. Collins*, 154 W. Va. 771, 180 S.E.2d 54 (1971), the court did not abuse its discretion in refusing to give the requested instructions. *See* Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).