480 S.E.2d 162

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Franklin WILLIAMS, Defendant Below, Appellant.**

No. 23289.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1996.

Decided Dec. 6, 1996.

Robert E. Blair, Welch, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for Appellee.

PER CURIAM:

This case is before this Court[1] upon an appeal from the final order of the Circuit Court of McDowell County, West Virginia, entered on July 3, 1995, sentencing the appellant, Franklin Williams, to a penitentiary term of not less than one nor more than fifteen years, and imposing a $500 fine, for a violation of the West Virginia Uniform Controlled Substances Act. Specifically, a McDowell County jury found the appellant guilty of possession of, with intent to deliver, a substance "contained in tylox and identified as oxycodone, a Schedule II controlled substance and a narcotic." The possession of, with intent to deliver, such a controlled substance violates the provisions of *W. Va. Code*, 60A–4–401(a)(i) [1983], of the Act.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. This case concerns Rule 404(b) of the *West Virginia Rules of Evidence* as that Rule relates to "other crimes, wrongs or acts" allegedly committed by the appellant, concerning tylox, prior to the incident in question. For the reasons stated below, this Court is of the opinion that the circuit court acted correctly with regard to Rule 404(b), and the final order is, therefore, affirmed.

I

The appellant and his wife, Gloria Marie Williams, lived in Davy, McDowell County, West Virginia. The appellant's sister-in-law, Daisy Goren, lived in Hollywood, Florida.

The record indicates that, prior to the incident in question, the appellant stated to various individuals in the McDowell County area that he periodically received tylox tablets in the mail from his sister-in-law in Florida and that he often sold the tablets to

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

others. Information concerning the appellant's statements ultimately came to the attention of Robert K. Bowman, a police officer of the City of Welch, West Virginia. At the time, Officer Bowman was on temporary assignment to the West Virginia State Police to do investigative work concerning violations of the West Virginia Controlled Substances Act. Officer Bowman contacted the postal inspector in Charleston, West Virginia, and on February 1, 1994, a "parcel watch" was placed by the postal inspector upon the Davy Post Office mail box registered to the appellant and his wife.

On February 22, 1994, a package arrived at the Davy Post Office addressed to Gloria Marie Williams from "D. Goren" of Hollywood, Florida. The postal authorities in Davy alerted the postal inspector in Charleston. A police dog "sniff-test" performed soon after indicated the presence of a controlled substance in the package, and a search warrant concerning the package was obtained by Officer Bowman.

On the morning of February 23, 1994, Ms. Williams appeared at the Davy Post Office and asked whether a package from her sister had arrived from Florida. The reply was in the negative. Thereafter, at noon, the appellant appeared at the post office and checked the mail box. Finding it empty, he left without making any inquiry concerning the package. Later that day, at approximately 3:25 p.m., Launa Hale, a Davy Post Office official, called Ms. Williams at the direction of the postal inspector and told Ms. Williams that a package had arrived. Shortly thereafter, Ms. Williams appeared at the post office and received the package.

Having exited the building, Ms. Williams was approached in the post office parking lot by the postal inspector and Officer Bowman.

Ms. Williams consented to open the package at that time, and its contents revealed 120 tablets found in the leg of an item of baby clothing. Upon subsequent analysis by the State Police, the tablets proved to be tylox, containing oxycodone. Although Ms. Williams was placed under arrest on February 23, 1994, the appellant was not arrested prior to indictment.

## II

In October 1994, the appellant, Gloria Marie Williams and Daisy Goren were jointly indicted by a McDowell County grand jury concerning the incident of February 23, 1994. In particular, the appellant and Ms. Williams were charged with possession of tylox, with intent to deliver, in violation of *W. Va.Code*, 60A–4–401(a)(i) [1983],[2] and Daisy Goren was charged with the delivery of that substance. The appellant was tried separately from his co-defendants. Following a mistrial in January 1995 resulting from a jury deadlock, the appellant was again tried upon the indictment in April 1995.

On April 6, 1995, the circuit court conducted an *in camera* hearing concerning the admissibility by the State of "other crimes, wrongs or acts" evidence within the meaning of Rule 404(b) of the *Rules of Evidence*. The evidence consisted of the appellant's alleged possession of tylox tablets prior to February 23, 1994. The first witness to testify during the hearing was Cathy Jack, a teacher at Mount View High School in McDowell County. Ms. Jack testified that in November or December 1993 the appellant, a custodian at the school, gave her a tylox tablet when she complained of a headache. Ms. Jack stated that she assumed that the appellant had a prescription for tylox tablets and that the

---

2. Specifically, the appellant and Ms. Williams were charged in the indictment with possession of, with intent to deliver, a substance "contained in tylox and identified as oxycodone, a Schedule II controlled substance and a narcotic." *See W. Va.Code*, 60A–2–206(b)(1) [1991], concerning oxycodone. As the penalty statute, *W. Va.Code*, 60A–4–401(a)(i) [1983], states:

(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

Any person who violates this subsection with respect to:

(i) A controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony, and, upon conviction, may be imprisoned in the penitentiary for not less than one year nor more than fifteen years, or fined not more than twenty-five thousand dollars, or both [.]

word "tylox" was printed upon the tablet he gave her. According to Ms. Jack, the appellant did not charge her for the tablet. In addition to Ms. Jack, two others who worked at Mount View High School, i.e., Linda Dalton and John Watts, testified at the *in camera* hearing. Linda Dalton testified that the appellant indicated to her, prior to February 23, 1994, that he frequently received tylox tablets in the mail, wrapped in baby clothes, from his sister-in-law and that he sold the tablets for $13.00 each. Similarly, John Watts testified that, in February or March 1992, the appellant indicated to him that he received tylox tablets in the mail from his sister-in-law. At the conclusion of the hearing, the circuit court, citing this Court's decision in *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), ruled that the above evidence was admissible at trial under Rule 404(b).

The appellant's trial began on the day following the *in camera* hearing, and the State's witnesses included Cathy Jack, Linda Dalton and John Watts. Each of those witnesses gave testimony similar to that adduced during the *in camera* hearing.[3] Moreover, at the conclusion of the testimony of each of those witnesses, the circuit court gave the following limiting instruction to the jury:

> Ladies and gentlemen of the jury, in the testimony of this witness, the State has introduced into evidence in this case certain evidence of alleged other wrongs or other acts of the defendant, Frank Williams. Please understand that such evidence was introduced and allowed to be admitted solely and only for the limited purpose of providing proof of motive, intent, plan, knowledge, control and dominion over the substances at issue herein, or

absence of accident, and such evidence must be considered by you only for that limited purpose and no other. You are hereby instructed and directed that you must consider such evidence only for that limited purpose and no other.

In addition, the State's witnesses included Doug Ramey, the Postmaster for the Davy Post Office, and Launa Hale, the Postmaster Relief for the Davy Post Office. Those witnesses indicated, over the objection of the appellant, that, prior to February 23, 1994, other packages had been mailed to the Williams' post office mail box from Florida. Mr. Ramey and Ms. Hale stated, however, that they had no knowledge of the contents of those other packages. Although no Rule 404(b) *in camera* hearing was conducted as to those witnesses, the circuit court, at the conclusion of Mr. Ramey's testimony, gave a limiting instruction to the jury which was similar to the instruction set forth above.

The appellant's evidence at trial consisted solely of his testimony denying any connection to tylox tablets and denying any involvement concerning mailings from Daisy Goren to Ms. Williams. At the conclusion of the trial, the circuit court's charge to the jury included a limiting instruction of the nature described above.

The verdict of the jury, finding the appellant guilty of possession of a controlled substance, with intent to deliver, was rendered on April 10, 1995. Following the denial of post-trial motions and the sentencing of the appellant to the penitentiary, this appeal followed.

### III

Rule 404(b) of the *West Virginia Rules of Evidence* provides:

> Q. —Frank Williams?
> A. Yes, and I said 'What?' and he said, 'A tylox,' and he pulled it out of his pocket, and he handed it to me [.]
> ....
> Q. And, is there anything else from the appearance of the capsule that makes you believe it was a tylox?
> A. It said tylox.
> Q. Written on the capsule?
> A. Yes.

---

3. Cathy Jack, for example, testified at trial as follows:
   A. I went in Linda's office after my workday, and I was complaining about what a stressful headache I had. I have a lot of stressful days at school, of course, and I was just in a lot of pain, and he was sitting there in her office and said he had something that would help me with my headache—
   Q. When you say "he," are you referring to the Defendant—
   A. To Frank.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

As this Court has often stated, rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion. Syl. pt. 2, *State v. Franklin,* 191 W.Va. 727, 448 S.E.2d 158 (1994); syl. pt. 2, *State v. Slaman,* 189 W.Va. 297, 431 S.E.2d 91 (1993); syl. pt. 2, *State v. Perolis,* 183 W.Va. 686, 398 S.E.2d 512 (1990); syl. pt. 7, *State v. Dietz,* 182 W.Va. 544, 390 S.E.2d 15 (1990). That general concept was applied, in *McGinnis, supra,* with regard to Rule 404(b) evidence. As the *McGinnis* opinion states, this Court reviews a circuit court's decision "to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard." 193 W.Va. at 159, 455 S.E.2d at 528. Moreover, this Court stated in that opinion that, recognizing the potential prejudicial impact inherent in Rule 404(b) evidence, we, nevertheless, review the admission of such evidence in the light most favorable to the party offering it. 193 W.Va. at 159, 455 S.E.2d at 528.

In the subsequent case of *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), the standard of review concerning Rule 404(b) evidence was further explained. The *LaRock* opinion states:

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the 'other acts' evidence is more probative than prejudicial under Rule 403.

196 W.Va. at 310–11, 470 S.E.2d at 629–30.

Here, the appellant contends that the circuit court committed error in allowing Cathy Jack to testify at trial that the appellant gave her a tylox tablet in 1993. Specifically, the appellant asserts that, in allowing that evidence to go to the jury, the circuit court merely recited the language of Rule 404(b), without requiring the State to establish a specific purpose for the admission of that evidence. The State, on the other hand, contends that the admission of Ms Jack's testimony at trial complied with the requirements of *McGinnis* and that, in view of the *in camera* hearing and the limiting instructions, the admission of that testimony was within the circuit court's discretion.

The legal principles of *McGinnis* notwithstanding, a review of the record in this case reveals factual circumstances unlike those described in the *McGinnis* opinion. In *McGinnis,* the defendant was convicted of murder of the first degree following a trial during which the State was allowed to make "extensive use" of Rule 404(b) evidence. In particular, although the defendant therein was charged with the murder of his wife, evidence of other matters, including infidelity, embezzlement, arson and tax fraud, was given to the jury. Concluding, in *McGinnis,* that the State had engaged in "shotgunning" with regard to that evidence and that the State had failed to establish the relevancy thereof to the murder charge, this Court ordered that the defendant's conviction be set aside. Noting that a review of the record demonstrated "no logical nexus between the massive Rule 404(b) evidence and the material issues in this murder case," 193 W.Va. at 161, 455 S.E.2d at 530, we held, in *McGinnis,* as follows in syllabus points 1 and 2:

1. When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must

be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

2. Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

*See also* syl. pts. 2 and 3, *State v. Phelps,* 197 W.Va. 713, 478 S.E.2d 563 (1996); syl. pts. 3 and 4, *State v. McGhee,* 193 W.Va. 164, 455 S.E.2d 533 (1995).

Unlike the facts in *McGinnis,* however, a "logical nexus" between the testimony of Cathy Jack, that the appellant gave her a tylox tablet in 1993, and the issue at trial concerning possession of tylox, with intent to deliver, is more demonstrable. During the April 6, 1995, *in camera* hearing, the State indicated that one of the purposes for the admission of such testimony was to negate any assertion by the appellant that Daisy Goren sent the tylox tablets to the appellant and Ms. Williams on February 23, 1994, in order that Ms. Goren would be sure to have them, as prescribed by a doctor, when she visited West Virginia. In particular, the State explained during the *in camera* hearing that evidence of the appellant's involvement with tylox prior to February 23, 1994, would show "absence of accident" within the meaning of Rule 404(b) because "the defense's position has been consistent that the reason these pills were sent was that it was a one-time occasion by Daisy Goren who was planning a trip and that nobody up here, nobody being Frank or Gloria Marie Williams, knew that those pills were coming [.]" In fact, we observe that, during the appellant's trial, Linda Dalton testified that the appellant once stated that, if he ever got caught by the police, he would simply say that he and Ms. Williams received the tylox because Daisy Goren "had come one time and lost them, or they didn't get here, or she lost her prescription, or something." Notably, neither the petition for appeal nor the appellant's brief mentions Linda Dalton or John Watts, both of whom testified during the *in camera* hearing and at trial that the appellant stated, prior to February 23, 1994, that he received tylox tablets in the mail. Rather, the appellant focused this assignment of error upon the testimony of Cathy Jack.

■ At the conclusion of the April 6, 1995, *in camera* hearing, the circuit court specifically found the Rule 404(b) evidence, including the testimony of Cathy Jack concerning the delivery of a tylox tablet to her in 1993, to be established by a preponderance of the evidence and relevant to the charge described in the indictment. Moreover, the circuit court concluded that the evidence met the "balancing test requirements so that it should be admitted and presented to the trier of fact in this case, and [that] its probative value on the guilt or innocence of this Defendant [did] outweigh any prejudicial effect[.]" Of course, for purposes of Rule

404(b), it is of no import that the appellant was not charged with or convicted of transferring the tylox tablet to Ms. Jack. *See,* 1 F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 4–5(A) (Michie 1994). As indicated above, a limiting instruction was given during the trial following Ms. Jack's testimony and given again at the conclusion of the trial during the circuit court's charge to the jury.

■ In contrast to the facts in *McGinnis,* there was no "shotgunning" here by the State concerning Rule 404(b) evidence. Clearly, the circumstances in this case lack the compelling quality which, in *McGinnis,* resulted in a setting aside of the defendant's conviction. Thus, the appellant's contention that the circuit court committed error in allowing Cathy Jack to testify at trial, that the appellant gave her a tylox tablet in 1993, is without merit.

■ Nor does this Court find persuasive the appellant's second assignment of error concerning the testimony of Doug Ramey and Launa Hale. As stated above, Doug Ramey was the Postmaster for the Davy Post Office, and Launa Hale was the Postmaster Relief for that office. Those witnesses testified at trial, over the objection of the appellant, that prior to February 23, 1994, other packages had been mailed to the Williams' post office mail box from Florida. Mr. Ramey and Ms. Hale stated, however, that they had no knowledge of the contents of those other packages. Citing Rule 404(b) and indicating that no *in camera* hearing was conducted concerning that testimony, the appellant contends that the circuit court committed error in admitting the testimony of Mr. Ramey and Ms. Hale to the jury.

That assignment of error is deprived of significance, however, when viewed in the context of the entire record below. First, although no Rule 404(b) *in camera* hearing was conducted as to those witnesses, the circuit court, at the conclusion of Mr. Ramey's testimony, gave a limiting instruction to the jury, as suggested in syllabus point 2 of *McGinnis.* More significantly, however, the testimony of Mr. Ramey and Ms. Hale was elicited at trial following the testimony of Linda Dalton and John Watts to the effect that the appellant stated, prior to February 23, 1994, that he received tylox tablets in the mail. A review of the State's evidence at trial as a whole, therefore, demonstrates that the testimony of Mr. Ramey and Ms. Hale was cumulative of, and less inculpatory than, the testimony of Linda Dalton and John Watts. Accordingly, this Court is of the opinion that the admission of the testimony of Mr. Ramey and Ms. Hale did not constitute an abuse of discretion, and that assignment of error is without merit.

■ In this case, the State relied upon the theory of constructive possession in its prosecution of the appellant upon the indictment concerning the incident of February 23, 1994. As stated in syllabus point 4 of *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975): "The offense of possession of a controlled substance also includes constructive possession, but the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that it was subject to [the] defendant's dominion and control." *See also* syl. pt. 3, *State v. Chapman,* 178 W.Va. 678, 363 S.E.2d 755 (1987). Here, the appellant and Gloria Marie Williams resided together as husband and wife and maintained a post office mail box registered in their names. Moreover, prior to the incident of February 23, 1994, the appellant, as demonstrated through the testimony of various witnesses, was involved in the receipt of tylox tablets through the mail. Of particular significance was the testimony, at trial, of Cathy Jack, who stated that the appellant gave her a tylox tablet in November or December 1993, an occurrence relatively close in time to the incident in question. Although Ms. Jack's testimony was admitted at trial pursuant to Rule 404(b), that evidence constituted "substantive evidence" for the consideration of the jury. 1 F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 4–5(B)(2) (Michie 1994). Consequently, although the appellant also challenges the sufficiency of the evidence to support the verdict, this Court is of the opinion to reject that

challenge. As we stated in syllabus point 3 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*See also* syl. pt. 2, *State v. LaRock, supra.*

Finally, this Court is of the opinion that the appellant's remaining assignments of error concerning the proceedings of the grand jury, the selection of the jury at trial and the manner in which the State established venue in this case were not sufficiently raised below and are, therefore, also without merit.

Accordingly, upon all of the above, the final order of the Circuit Court of McDowell County, entered on July 3, 1995, is affirmed.

Affirmed.

RECHT, Judge, sitting by temporary assignment.