655 S.E.2d 73

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**David NELSON, Defendant Below, Appellant.**

No. 33188.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 2007.

Decided Oct. 30, 2007.

Mark Hobbs, Esq., Chapmanville, WV, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, R. Christopher Smith, Esq., Assistant Attorney General, Charleston, WV, for Appellee.

PER CURIAM.

This case is before this Court upon the appeal of David Nelson from his convictions in the Circuit Court of Mingo County, West Virginia, of six felony offenses relating to the death of Wanda Lesher. The convictions are: murder of the first degree, kidnapping, sexual assault in the first degree and three counts of conspiracy relating to those offenses. By order entered on May 20, 2005, appellant Nelson was sentenced to two penitentiary terms of life without mercy upon the murder and kidnapping convictions, 15 to 35 years upon the sexual assault conviction and three terms of 1 to 5 years upon the conspiracy convictions. The Circuit Court directed that the sentences be served consecutively.

The facts surrounding Wanda Lesher's death are egregious. Of the four individuals with whom Nelson allegedly participated, three have been convicted of various felonies in the case including murder of the first and second degree, kidnapping and sexual assault in the first degree. At the time of Nelson's trial, the fourth individual was expecting to enter a plea to murder of the first degree with the hope of receiving a sentence of life with mercy.

Appellant Nelson relied upon the defense of alibi and testified at trial. On cross-examination, however, he was challenged with acts of misconduct he allegedly committed in the past. Nelson contends, *inter alia*, that he was denied a fair trial because those acts constituted matters covered by Rule 404(b) of the West Virginia Rules of Evidence, as to which the Circuit Court took none of the required cautionary measures. The State responds by stating that, inasmuch as Nelson placed his character in issue at trial, the Circuit Court acted within its discretion in allowing the cross-examination as rebuttal.

This Court has devoted considerable time to examining the appellant's petition, the record of the proceedings below and the briefs and argument of counsel. This Court concludes that the alleged acts of past misconduct raised by the state during the cross-examination were unverified, were inflammatory and were subject to the requirements of Rule 404(b). Nor in the context of rebuttal upon the issue of character were the alleged acts admissible. Consequently, Nelson was denied a fair trial. The convictions, as well as the May 20, 2005, sentencing order, are set aside, and this case is remanded to the Circuit Court for a new trial.

## I.

### Factual Background

On the evening of August 30, 2002, Wanda Lesher exited a tavern and drove away accompanied by Aaron Nelson and Alfred Dingess, Jr. Soon after, she was told to drive up a mountain road to Canterbury Cemetery. Shortly after their arrival, Clinty Nelson and Zandell Bryant appeared at the Cemetery.[1] According to the State, appellant David Nelson was also present, and each of the five men sexually assaulted Wanda Lesher in spite of her pleas to be allowed to return home to her children.

Following the sexual assault, Aaron Nelson took a two-by-four board from a nearby picnic table, and each of the men repeatedly struck and beat Wanda Lesher, fatally injuring her by way of skull fractures and broken facial, jaw and rib bones. She was then allegedly transported by appellant Nelson in his pick-up truck to Messenger Hollow, also in Mingo County, where, barely alive, the men placed her in a pond. Noticing that her body was still visible in the water, the men removed her from the pond and constructed a shallow grave where she was then covered with sticks and branches. When the body of Wanda Lesher was ultimately recovered by the State Police, it was determined that, after she was removed from the pond, she had been strangled with a shoe string and her hands tied behind her back. The State Medical Examiner testified at trial that the cause of Wanda Lesher's death was multiple blunt force injuries to the head, back and torso with drowning and strangulation as contributing factors. She most likely died in the early morning hours of August 31, 2002.

In addition to the recovery of the body at Messenger Hollow, the two-by-four and some of Wanda's jewelry were found at Canter-

---

1. Aaron Nelson and Clinty Nelson are appellant David Nelson's brothers.

bury Cemetery. Her car, destroyed by fire, was located in Logan County.

In September 2002, Alfred Dingess, Jr., gave the State Police a statement implicating himself and Aaron Nelson in the crimes committed against Wanda Lesher. Fourteen months later, Zandell Bryant gave a statement implicating himself as well as Clinty Nelson and appellant David Nelson. Thereafter, Alfred Dingess, Jr., spoke with the State Police again, this time including appellant Nelson as one of the assailants. On November 14, 2003, appellant Nelson gave a statement to Trooper B.L. Keefer of the State Police in which he stated that, at the time the crimes were committed against Wanda Lesher, he was at work at Classic Conveyors in Chapmanville, West Virginia.[2]

## II.

### Procedural Background

Aaron Nelson, Clinty Nelson and Zandell Bryant were convicted of a number of felony offenses relating to the death of Wanda Lesher, including murder of the first and second degree, kidnapping and sexual assault in the first degree.[3] Those convictions were obtained by the State prior to the trial of appellant David Nelson. At the time of Nelson's trial, Alfred Dingess, Jr., was expecting to enter a plea to murder of the first degree with the hope of receiving a sentence of life with mercy.

2. During the trial, the State emphasized that the evidence demonstrated that the appellant was not at work during the period in question. The defense responded by arguing that Nelson was uncertain about his whereabouts when, over a year later, he gave the statement to Trooper Keefer. In his statement, appellant Nelson indicated that he "should have been at work." He later indicated in the statement that he had "been at work." As noted, *infra*, the appellant asserted at trial that he was at home with his daughters at the time the crimes were committed.

3. As stated in the brief filed by the appellant: "Appellant's brothers, Aaron Nelson and Clinty Nelson, were convicted in this matter and now are serving life sentences without the possibility of parole. It is undisputed that Zandell Bryant was convicted by a jury, and it is appellant's belief that Zandell Bryant would have to serve a minimum of thirty years before eligibility for parole."

In the January 2005 term, a separate indictment was returned by a Mingo County grand jury against appellant Nelson charging him, in six counts, with crimes relating to the death of Wanda Lesher including: murder of the first degree, kidnapping, sexual assault in the first degree and three counts of conspiracy with regard to those offenses.[4]

The appellant's trial began in April 2005. Alfred Dingess, Jr., and Zandell Bryant, called by the State, testified that appellant Nelson, as well as the other men, sexually assaulted Wanda Lesher and participated in killing her. They also indicated that, after the beating at the Cemetery, her body was placed in a pick-up truck the appellant had driven to the scene. No physical evidence was submitted directly connecting the appellant to the crimes.

The appellant's wife, Lynetta Nelson, called by the defense, testified that she left home on the evening in question, August 30, 2002, to report to work at Logan General Hospital as a nursing assistant, leaving the appellant at the house with their two daughters, approximate ages 14 and 5. Lynetta Nelson stated that she spoke with the appellant that night by telephone and saw him the next morning when she returned home. The oldest daughter, Keisha, testified that the appellant was home that evening.

Appellant Nelson took the stand, denied ever meeting Wanda Lesher, and stated that

4. Pursuant to W. Va.Code § 61–2–1 (1991), murder "by any willful, deliberate and premeditated killing" is murder of the first degree. Kidnapping, under W. Va.Code § 61–2–14a(a) (1999), includes the confinement of a person by force or duress for the purpose of extorting an advantage or for the purpose of shielding the assailant from capture or arrest following the commission of a crime. Sexual assault in the first degree, under W. Va.Code § 61–8B–3(a)(*l*)(I) (2000), occurs when a person engages in sexual intercourse or sexual intrusion with another person and, in so doing, "inflicts serious bodily injury." Finally, with regard to the conspiracy counts, W. Va. Code § 61–10–31 (1971), provides that it shall be unlawful for two or more persons to conspire "to commit any offense against the State" if one or more of such persons "does any act to effect the object of the conspiracy."

he was at home with his daughters during the period in question. He further testified that, having lived with Lynetta since 1988, he was a "family man" and not a person who would rape or sexually assault women. As more fully discussed below, during cross-examination the State revealed for the first time to the Circuit Court and defense counsel a 1987 report from a child protective services worker indicating that Shelia Nelson, one of the appellant's sisters, alleged that, in 1983 or 1984 when she was 13 years old, the appellant committed acts of sexual abuse or sexual assault against her.[5] The Circuit Court concluded that, in view of the report, cross-examination concerning the allegations would be permitted as rebuttal character evidence with regard to the appellant's assertion that he was a "family man" who would not engage in sexual offenses against women. As a result, the requirements pertaining to Rule 404(b) of the West Virginia Rules of Evidence, such as the conducting of an *in camera* hearing concerning the allegations and the giving of a limiting instruction to the jury, were deemed inapplicable. During the ensuing cross-examination, appellant Nelson denied any misconduct toward his sister, and the Circuit Court denied defense counsel's motion for a mistrial.

On April 15, 2005, the jury returned its verdict finding the appellant guilty as charged in the indictment and declining to recommend mercy upon either the murder or kidnapping charges. The appellant's post-trial motions were denied, and by order entered on May 20, 2005, he was sentenced to two penitentiary terms of life without mercy upon the murder and kidnapping convictions, 15 to 35 years upon the sexual assault conviction and three terms of 1 to 5 years upon the conspiracy convictions. The sentences were ordered to be served consecutively. The appellant's petition for appeal was granted by this Court in September 2006.

---

5. As stated by appellant Nelson's counsel: "The documents that have been reviewed here today indicate in 1987 there was a Shelia Nelson came into the department and gave a statement complaining of acts that occurred in 1983 or 1984."

6. With regard to the latter provision of Rule 404(b), it should be noted that, in February 2005, the appellant filed a pretrial motion in the Cir-

## III.

### Standards of Review

The principal assignment of error before this Court is whether the alleged past acts of the appellant toward his sister, Shelia Nelson, constituted proper rebuttal evidence by the State concerning the appellant's character under Rule 404(a)(1) of the West Virginia Rules of Evidence, or whether the alleged past acts constituted matters covered by Rule 404(b) as to which a number a precautionary measures are required.

With regard to character, Rule 404(a)(1) provides in relevant part that "[e]vidence of a person's character or a trait of character is not admissible," except for evidence of a pertinent trait of character of the accused offered "by the prosecution to rebut the same." On the other hand, Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.[6]

Consequently, the issue concerning the alleged past acts of appellant Nelson involves an interpretation by this Court of the West Virginia Rules of Evidence which is a separate matter from simply determining whether the cross-examination was within the Circuit Court's discretion. As recognized in *State v. Sutphin*, 195 W.Va. 551, 466

---

cuit Court seeking the disclosure of papers and documents "intended to be used by the State as evidence." The record indicates, however, that the appellant's counsel had no knowledge of the 1987 report concerning Shelia Nelson until the State began to cross-examine the appellant at trial.

S.E.2d 402 (1995), "a trial court's ruling on the admissibility of testimony is reviewed for an abuse of discretion," but to the extent the ruling turns on an interpretation of the Rules of Evidence "review is plenary." 195 W.Va. at 560, 466 S.E.2d at 411. *State v. McDaniel,* 211 W.Va. 9, 12, 560 S.E.2d 484, 487 (2001). Thus, in considering whether the Circuit Court in the current matter committed error in applying Rule 404(a)(1) rather than the substantially different Rule 404(b), the standard of review is *de novo.*[7]

## IV.

### Discussion

■■■■ Appellant Nelson contends that he was denied a fair trial because his cross-examination by the State, upon the 1987 report, brought out alleged acts of past sexual misconduct which should have been subjected to a Rule 404(b) disposition by the Circuit Court. The precautionary measures to be taken under Rule 404(b) were set forth by this Court in syllabus point 2 of *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994):

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of

Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.[8]

---

**7.** Although the Circuit Court did not apply Rule 404(b) in allowing the State to cross-examine the appellant with regard to the alleged past acts concerning his sister, we note the standard of review pertaining to that Rule as set forth in *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996):

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403 [Rule 403 is entitled "Exclusion of relevant evidence on grounds of prejudice, confusion or waste of time."].

196 W.Va. at 310–11, 470 S.E.2d at 629–30. *State v. Taylor,* 215 W.Va. 74, 78, 593 S.E.2d 645, 649 (2004).

**8.** Whereas Rule 402 of the West Virginia Rules of Evidence states that "[a]ll relevant evidence is

admissible," Rule 104(a) provides that the trial court shall determine the admissibility of the evidence. In that regard, Rule 104(b) states as follows: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Thus, as syllabus point 8 of *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), *affirmed,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), observes, in part: Protection against unfair prejudice under Rule 404(b) is provided by "the relevancy requirement of Rule 402—as enforced through Rule 104(b) [.]" *See also,* Rule 401 which states that "relevant evidence" means evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Rule 403 provides, in part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice [.]" *See, State v. Meade,* 196 W.Va. 551, 555–56, 474 S.E.2d 481, 485–86

Syl. pt. 4, *State v. McIntosh,* 207 W.Va. 561, 534 S.E.2d 757 (2000); syl. pt. 4, *State v. Scott,* 206 W.Va. 158, 522 S.E.2d 626 (1999); syl. pt. 2, *State v. Williams,* 198 W.Va. 274, 480 S.E.2d 162 (1996). *See,* Vol. 1, F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4–5(B)(2) p. 60 (3rd ed. Cum.Supp.1999).

 In the case to be determined, a review of the State's cross-examination of appellant Nelson reveals that alleged acts of past sexual misconduct substantially beyond the scope and reach of character evidence under Rule 404(a)(1) were brought out before the jury. The cross-examination was not limited to whether the appellant sexually abused or sexually assaulted his sister, Shelia Nelson, one time when she was 13 years old. In spite of his denials and objection by defense counsel, the State's cross-examination suggested: (1) that the appellant sexually abused or assaulted Shelia a number of times, (2) that both he and his brother Clinty committed some of the acts, (3) that the misconduct continued for an unspecified period of time because it had occurred *since* Shelia was 13 years old, (4) that the appellant abused his other sisters and (5) that the appellant sexually assaulted Shelia "just like Wanda Lesher on August 31, 2002." The cross-examination of the appellant transpired, in part, as follows:

> Q. In fact, you, Clinty Nelson, both sexually abused your younger sister?
>
> A. No, sir.
>
> Q. Since she was age 13?
>
> A. No.
>
> Q. You had sex with her a couple of times in Logan County, didn't you?
>
> A. No, sir, I didn't

> Q. She stayed home[,] you would come in her room and force her to have sexual intercourse with you and you did it at least four times?
>
> A. No, sir, I didn't.
>
> Q. You abused your other sisters, too?
>
> A. No, sir, I didn't. * * *
>
> Q. You sexually assaulted your sister just like Wanda Lesher on August 31, 2002?
>
> A. No, I didn't.[9]

No evidence was submitted indicating that any court proceedings took place with regard to the above allegations of sexual misconduct. Shelia Nelson, 34 years old in 2005 and a resident of Breeden, Mingo County, was not called to testify during the appellant's trial. In ruling that the cross-examination would be allowed, the Circuit Court concluded that the previously undisclosed 1987 report from the child protective services worker was a sufficient basis to permit the State to rebut the appellant's character evidence that he was a family man who would not rape or sexually assault women. The report, sealed or unsealed, was never admitted into evidence.

Reviewing the Circuit Court's ruling *de novo* in the context of Rules 404(a)(1) and 404(b), this Court finds it difficult to sustain the proposition that the cross-examination elicited nothing more than rebuttal character evidence. Although the alleged acts may have been relevant to whether the appellant was a person who would rape or sexually assault women, the Circuit Court, beyond summarily concluding that the report could serve as a basis for the State's cross-examination, never engaged in a factual determination concerning whether there was sufficient

(1996) (confirming that relevant evidence should be excluded when its probative value is substantially outweighed by the danger of unfair prejudice); *State v. Dillon,* 191 W.Va. 648, 661, 447 S.E.2d 583, 596 (1994) (stating that Rule 403 "prohibits the admission of evidence the probative value of which is outweighed by its potential prejudice"). Accordingly, as set forth above, *McGinnis* refers to *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986), syllabus point 3 of which holds: "Before a trial court can determine that evidence of collateral crimes is admissible under one of the exceptions, an *in camera*

hearing is necessary to allow a trial court to carefully consider the admissibility of collateral crime evidence and to properly balance the probative value of such evidence against its prejudicial effect."

9. With regard to the latter point, the prosecutor, during closing argument to the jury, stated that the appellant was the "[s]ame family man who was accused by his sister of doing horrible things. The *same things,* at least partly[,] to Wanda Lesher." (emphasis added)

evidence to show that the past acts occurred. *LaRock, supra.* No *in camera* hearing was conducted, and no specific findings were made with regard to whether the appellant committed multiple acts, whether he committed them against one or more of his sisters, the extent to which he and his brother, Clinty Nelson, may have both committed them and whether the alleged acts were remote in time to the current charges.

Moreover, the State's cross-examination concerning the alleged acts of past sexual misconduct was noticeably prejudicial. Not only were the accusations with regard to the sisters inflammatory in themselves, their impact before the jury was, no doubt, enhanced by the suggestion that some of the acts were committed by both the appellant and Clinty. By the time the appellant was cross-examined, the jury had been told by the Circuit Court during the jury selection process that Clinty Nelson had been convicted of crimes concerning Wanda Lesher, and the jury had heard about Clinty Nelson's involvement in those crimes from Alfred Dingess, Jr., and Zandell Bryant. Consequently, to the extent the appellant was associated with Clinty Nelson during the State's cross-examination upon the alleged past acts, the Circuit Court's conclusion that the cross-examination brought out evidence only related to the appellant's character is problematic. In any event, the Circuit Court did not weigh the propriety of that evidence against its prejudicial effect as provided under Rule 403.

Finally, during the cross-examination of appellant Nelson, and in closing argument, the State suggested that the appellant sexually assaulted his sister, Shelia Nelson, "just like" Wanda Lesher, or did the "same things" to Wanda Lesher as he did to his sister, *see* n. 9, *supra,* which, *a fortiori,* necessitated the precautionary measures required under Rule 404(b). In addition to the absence of an *in camera* hearing and the balancing of considerations incumbent under Rule 404(b), no limiting instructions concerning the State's cross-examination were given to the jury.

■ In *State v. McDaniel,* 211 W.Va. 9, 560 S.E.2d 484 (2001), this Court confirmed the above principles of *LaRock* and *McGin-*

*nis,* and, in doing so, cited syllabus point 16 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), which observes:

> In the exercise of discretion to admit or exclude evidence of collateral crimes and charges, the overriding considerations for the trial court are to scrupulously protect the accused in his right to a fair trial while adequately preserving the right of the State to prove evidence which is relevant and legally connected with the charge for which the accused is being tried.

*State v. Compton,* 167 W.Va. 16, 20, 277 S.E.2d 724, 727 (1981); syl. pt. 2, *State v. Messer,* 166 W.Va. 806, 277 S.E.2d 634 (1981).

## V.

### Conclusion

The facts in this case are difficult to comprehend. It was undisputed at trial that Wanda Lesher suffered multiple sexual assaults by her assailants and repeated beatings with the two-by-four at the Cemetery while pleading to be allowed to go home. Shortly thereafter, she was put in a pond in Messenger Hollow, unconscious but still alive, and ultimately strangled before being left in a shallow grave. No physical evidence, however, directly connected the appellant with those terrible crimes, and, thus, the verdict of the jury rested largely upon the credibility of the witnesses, primarily Alfred Dingess, Jr., and Zandell Bryant. The witnesses included the appellant himself who denied committing the crimes against Wanda Lesher and who denied committing the alleged acts of past misconduct raised by the State, for the first time, during his cross-examination. One such allegation so raised was that both the appellant and Clinty Nelson had sexually abused their sister, whereas the current indictment, in Count VI, associated the appellant with others, including Clinty Nelson, in the charge of conspiracy to commit sexual assault against Wanda Lesher. As difficult as this case may be, this Court can only conclude that, in the absence of the protections afforded by Rule 404(b), the cross-examination by the State, as allowed by

the Circuit Court, denied the appellant a fair trial.

██ The verdict of the jury returned on April 14, 2005, the resulting convictions, as well as the May 20, 2005, sentencing order, are set aside, and this case is remanded to the Circuit Court of Mingo County, West Virginia, for a new trial.[10]

**Reversed and Remanded.**

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

MAYNARD, Justice, dissenting:

I would affirm the convictions of the defendant, David Nelson, because I do not believe the trial court nor the prosecutor committed any error. Clearly, the trial was in all respects fair and impartial, and the jury reached the correct verdict.

The facts in this case are brutal and some of the most horrible that I have ever read. The evidence shows that the defendant and the other four perpetrators raped the victim, Wanda Lesher. They beat Ms. Lesher on her torso at least nineteen times with a two-by-four, causing numerous bruises on her body and three broken ribs. The defendant and the other perpetrators also struck Ms. Lesher more than nine times on her head, fracturing every bone in her skull. The evidence shows that Ms. Lesher's upper and lower jaws were broken from being struck with a heavy object. In addition, the defendant and the others hit Ms. Lesher with such force by a two-by-four with nails sticking out of it that her brain went to the front of her skull and caused fractures to the bones. These fractures resulted in lacerations on Ms. Lesher's face. Further, the defendant and the others strangled Ms. Lesher, breaking a bone in the roof of her mouth. Ms. Lesher's lifeless, bloody, bruised and battered body was discovered lying in a shallow grave, covered with sticks and twigs, an ear was missing and she was naked with the exception of a pair of socks. The Deputy Chief Medical Examiner concluded that Ms. Lesher died as a result of multiple blunt force injuries to the head, back, and anterior torso, with ligature strangulation and drowning as contributory factors in her death. In

---

10. In addition to the assignment of error discussed above, the appellant also contends that the Circuit Court committed error in admitting, over his objection, Zandell Bryant's pretrial statement to the State Police. In the statement, Bryant implicated himself as well as Clinty Nelson and the appellant in the crimes committed against Wanda Lesher. The Circuit Court admitted the statement pursuant to Rule 804(b)(3) of the West Virginia Rules of Evidence as an exception to the hearsay rule, i.e., a statement against interest, where "the declarant is unavailable as a witness." The State concedes that Rule 804(b)(3) did not apply because, although the statement was admitted during the testimony of a State Trooper called in the State's case-in-chief, Bryant was available and was also called as a witness during the State's case-in-chief. The State contends that the error was harmless because Bryant's trial testimony was consistent with his pretrial statement. Nevertheless, inasmuch as this case is remanded for a new trial, this Court determines this issue to be moot.

Thus, while this Court need not definitively or preemptively determine the admissibility of Bryant's pretrial statement in this opinion, we note, as guidance concerning further proceedings below, Rule 801(d)(1)(B) of the West Virginia Rules of Evidence which indicates that a prior statement by a witness is not hearsay if: "The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." According to the appellant, Bryant's pretrial statement was improperly offered as a prior consistent statement and not to rebut a charge against Bryant "of recent fabrication or improper influence or motive."

Also moot is the appellant's assertion that the Circuit Court should have declared a mistrial when the prosecutor, during opening statements, emphasized the convictions of others previously obtained concerning Wanda Lesher's death, rather than the nature of the evidence to be presented during the appellant's trial. The Circuit Court declined *to* declare a mistrial but gave the jury a cautionary instruction. *See*, syl. pt. 1, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978) ("A judgment of conviction will not be reversed because of improper remarks by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice.") Upon review, this Court concludes that the cautionary instruction was a sufficient remedy under the circumstances and that a mistrial was not warranted. In view of the granting of a new trial, however, further comment upon this issue is unnecessary.

the midst of this indescribably horrible ordeal, Ms. Lesher begged to be allowed to go home to be with her children. What Ms. Lesher suffered in the final hours of her life is truly unimaginable.

I am simply shocked that the majority reverses the defendant's convictions based on allegedly improper questioning of the defendant by the prosecutor. Contrary to the majority, I believe that the defendant was properly questioned, under Rule of Evidence 404(a)(1), about allegations that he sexually abused his sister. The purpose of this questioning was to rebut testimony of good character offered by the defendant. Under Rule 404(a)(1),

> (a) *Character evidence generally.*—Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:
>
> (1) Character of accused.—Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

Rule 404(a)(1) is a good rule that serves a laudable purpose. Specifically, it permits the State to effectively challenge claims by a defendant that he or she is a person of high character who is morally incapable of committing the crime charged. Absent such a rule, a defendant's assertions of high moral character would go unchallenged by the State. The facts of the instant case perfectly demonstrate the need for the rule.

At trial, the defendant's counsel presented a photograph of the defendant with his wife and two daughters and represented to the jury that he is a family man. On direct examination, counsel elicited testimony from the defendant that he is not a cold-blooded killer, a kidnapper, and a rapist. Counsel elicited further testimony that the defendant does not have a general dislike of women, he does not like to beat and rape them, and he loves his wife.

Because the defendant put his own character at issue, the State clearly had a right under our rules to impeach the defendant's character. The State properly sought to do so by asking the defendant about allegations, from a 1987 child services report, that he had sexually abused his sister on numerous occasions from the time she was 13 years of age. These allegations of abuse were certainly relevant to rebut the defendant's claims that he is a family man who holds women in high esteem and who does not believe in beating or raping them. The trial court did not abuse its discretion in allowing the defendant to be asked about these allegations. Once the defendant denied the allegations, the jury possessed all the relevant evidence necessary with regard to the defendant's character to make the necessary credibility determinations.

Because of the majority's error in finding that the allegations at issue were not properly admitted under Rule 404(a)(1), the State is needlessly charged with the time and expense of retrying a defendant who was fairly found guilty of an evil and heinous crime by an impartial jury. Accordingly, I dissent.

STARCHER, J., concurring:

Four members of this Court, including jurists who could hardly be characterized as coddlers of criminals, concluded that the defendant's criminal trial was so flawed that there must be a "redo." Objecting to this Court's action we find no surprise here—a "tough on crime" "sound bite" dissent.

It's also no surprise that the dissent bears no relation to the facts of the case. As the Court's opinion points out, the circuit court *could have* weighed the "other crimes" evidence, and given a limiting instruction, if that evidence was found to be relevant and reliable, etc., after a hearing. But this never happened.

"Who cares?" says the dissent. "It was a gruesome murder, the defendant is probably guilty—end of story!"

Thankfully, this Court did care, and protected the integrity of our justice system. Accordingly, I concur.